The next case this morning is 19-1424 In Re. HIPAA Subpoena. Mr. Libby, good morning. Mr. Stone. Good morning. If the Court please, Frank Libby on behalf of Appellant Intervenor Arthur Wood in this matter. With me today is my colleague Brian Sullivan, my firm, and also Attorney Bruce Singel. Mr. Singel and his firm and Ms. Warren Dwyer represent the remaining appellant intervenors. If the Court please, the proceedings on this intervenor's motion to quash the government record subpoena encompass both the magistrate judge proceedings and decision and the district court's decision. With the Court's permission, Mr. Singel and I would propose to divvy up our time and the arguments. I will take why the magistrate judge's decision was right, motion to quash was granted, and Mr. Singel, how the U.S. district court's order got it wrong, and would request two minutes' rebuttal. Those are different? Those two things are different? We believe in terms of splitting our arguments anyway, Your Honor. We just, as a matter of, so as not to sort of over, try not to overlap. They do, of course, overlap somewhat, but that's how we decided we'd split up the workload. All right, you have two minutes. Thank you very much. Thank you, Judge. Here the magistrate judge was tasked by reference from the district court with the responsibility of considering the record, determining the relevant facts, and resolving the motion to quash this government's record subpoena. Your Honor, the magistrate judge properly granted the motion to quash, and the court should affirm. The sole issue before the magistrate judge, by agreement of the parties, was whether the recorded calls were intentionally intercepted as that term has meaning under Title III, the Electronic Communications Privacy Act, we call it T3, for efficiencies. The framework regarding T3 set out in the statute was further articulated by this court's leading case of PharmaTrack. And undergirding that is the maximal protection to be given, the precious rights of privacy, and the congressional intent set out in the legislative history where the term intentional here, for purposes of determining whether intentional interceptions are violative of T3, turns only upon proof of conscious objective either of results, this is a conscious objective of the result of the taping, or conscious objective of the conduct at issue, may be satisfied by reference to either of those. It's in the disjunctive. More immediately here, because T3 provides civil process for not only damages, but equitable relief is what the intervenors sought here, that is to suppress the recordings that would have otherwise been produced responsive to the government's subpoena upon their employer. That was the nature of the motion to quash. Now it bears noting that T3 does not require any proof of either specific intent or willfulness. In fact, the Congress amended the statute in 1986 to make it clear that there was no willfulness element here. When you have a conscious objective to bring about a result, when you do have that, you have a reason to bring about the result, a reason for the conscious. We call it motive. What's your theory of what the motive was for recording this worker after she went? Respectfully, Your Honor, there is some case law that indicates that motive is not an element of T3. It's relevant. You're now telling me something different. My question was, what is your theory of motive? And are you saying you don't have one? Motive was not on the record before the master objection. So there's no evidence of motive whatsoever? I believe not. I don't believe so. Well, isn't there evidence that, isn't there a finding by a magistrate judge that the illegal recording was only found by PSI when it was notified of the subpoena? Does it have to do with motive? That cuts to the question of whether there was contemporaneous knowledge on the part of PSI. Well, this is only recorded if you didn't know about it taking place. Two answers to that, if I may, Your Honor. First, there's no element, there's no requirement in the statute that there be contemporaneous knowledge. And I believe that that's an offshoot of the disjunctive nature of So you have a conscious objective to do something, but you don't know you're doing it? Well, here we have the company. Not an individual, not a single named individual. The company is the respondent here. And it could be satisfied, the collective knowledge of the company, which the magistrate judge applied here, employed here, was what did the company know and what did they do and what inferences could we draw from that at the critical juncture of rewiring that telephone extension on the move from the second floor to the third floor. That was the critical juncture and the critical focus for the magistrate judge. And he got it all right. Well, we've read that. And frankly, it reads like it's a no or should have known standard that the magistrate was applying. But put that to one side, back to the facts. Is it also the case that this went on for like well more than a year or two and there's no evidence anyone ever listened to any of the recordings or that the company even knew they were there until they got the subpoena? To the contrary, Your Honor. First, the company did have access under its record and evaluate server to actually see the lines that were being recorded. This is after they do the specific sequential conduct of rewiring the extension 1 and 2. How is that? Wait, wait, wait. How is that wrong what I just said? Because I want to correct it. The company collectively knew. Was there any evidence that anyone ever listened to these recordings? I don't believe. The record is silent on that, Your Honor. We don't know. So, again, there's no evidence that they had any motive at all to record her. There's no evidence at all that they ever listened to her. Under the statute. But you want to find that they nevertheless consciously had it as objective recording her. Why? Your Honor, the record is silent on that before the magistrate judge, but the magistrate judge was perfectly authorized and entitled to find, as it did, none of those finding clearly erroneous what the company knew and did at the time of the just leading up to the intercepted calls. Right, but isn't it a bit of a one-on-one? The magistrate found there were two possible explanations. One was it was intentionally done. The other was inadvertently done. Actually, I think that was a misnomer, Your Honor. The magistrate judge found earlier in his decision on page 8 that the company knew it was recording those calls at the time they were recording them, and they knew that it had a disable the recording function, or those calls would be recorded in perpetuity. That's the magistrate judge's language. That's saying they knew how the thing worked. It isn't saying that they intended to put that workability into action. I read that as saying there were two possible explanations the magistrate was grappling with. One was intent and one was inadvertently. Well, the magistrate judge was grappling with, Your Honor, if I may. It was taking the government's argument at oral argument that there was some negligence involved here. But he found, if I see my time, if I may finish this. You may finish briefly. There was some negligence involved. But the magistrate judge was, as he was entitled to on referral from the district court, entitled to find S fact. Otherwise, he was persuaded, and he said as much, he was persuaded by the co-location of facts of what the company knew, that it had been recording, knew it was recording, and would continue to record that extension unless the record and evaluate function was disabled and the record said that it was not. Thank you, Your Honor. Thank you. And Mr. Singel will handle the rebuttal. Mr. Singel, good morning. Oh, good afternoon now. Good morning, Your Honor. May it please the court. I want to focus on the two principal flaws in the district court's decision. Understanding, and I heard loud and clear, Judge Hayata, your skepticism about separating out the two decisions because necessarily the critique of Judge Gorton's decision has to reflect the propriety of the magistrate judge's decision. But the two principal flaws I want to focus on. Isn't the only issue before us is to look at the magistrate's decision and decide whether there's a clear factual error or an error of law? And we decide that de novo, don't we? The standard of review here is the same as the standard of review that the district court had of the magistrate judge's decision. And that is the clearly erroneous for factual issues and error of law. Right, so we basically read but put to one side the district court decision. And look at the magistrate and we do the same thing the district court is required to do, right? I believe that's the case, Your Honor. And when you do that, I think you will find that the, and our view certainly is that the magistrate's judge's decision was not clearly erroneous in that he properly found and articulated evidence of intentional intercepting of my client, Kara Middlebrooks' phone calls after she moved to the third floor. And in finding such intentional conduct, the magistrate judge properly focused on the conduct of the company with respect to her particular extension. And found that they intended for that extension to record by virtue of connecting it to a recording license. When she moved to the third floor, they intended that it continue to record because in the rewiring process, the company knew that it had to disable the recording function or it would continue to operate and record in perpetuity. And they did not do that. But here's the, when you read the magistrate's decision, you know, when we write opinions, the one thing the judge does is you double check the money clauses in your opinion. Those are the ones where you come right out and say what it is and what the standard is. And here in the magistrate's decision, he finds, and I'm looking at page 11, that PSI intentionally recorded the calls when it implemented the new system. Everybody agrees on that. All right. And then he shifts language and says and should have known when it rewired her extension that the calls would continue to be recorded. I can't think of any plainer example of not using the intentional, which is required under the statute requirement, but instead the court used the should have known standard, juxtaposing the sentence where it used the intentional standard to say what everybody agreed was intended. I would suggest, Your Honor, that the use of that should have known phrase in that particular location was inartful but was not a basis of his holding because in other places, the magistrate judge expressly held that PSI knew that the system had to be disabled through the software in order to discontinue the function. Sure. You know, I know that if I don't watch those two stairs over there when I go down, I might trip, but if I get around and trip, I don't think you'd say it was intentional even though I knew that could happen. They knew you needed to turn that off. They didn't turn it off. The question isn't whether they knew they had to turn it off. The question is did they intentionally not turn it off. And the underlying facts and conduct as to Middlebrook's extension demonstrate that they did intend to not turn it off and to continue the recording when she moved to the third floor because of the actions, the affirmative steps that had to be taken when she moved to the third floor to rewire. We lay these out in the brief and they're laid out in the magistrate judge's decision. And there's also evidence in record of a third wire that was necessary for the recording which also had to be rewired when she moved to the third floor. So when you look at that conduct, Your Honor, you see a sequence of affirmative steps to ensure that her extension would continue to be linked, tied up to the recording license and in turn would continue to record once she moved to the third floor. And that's the proper focus rather than the focus of the district judge on some supposed policy with respect to third floor recording which was not followed in every instance in any event. Wasn't the district court also concerned that the magistrate, other sections that I haven't read of the magistrate's opinion, do when you read them just on a piece of paper without talking to the magistrate, seem to have moved the burden of proof to the other side. It says that the evidence isn't plain to support the government's position. Usually in other cases it's evident that your side is, that the government is right. The evidence before the court does not plainly explain why PSI failed to terminate. Clearly the government didn't have to prove plainly why PSI failed to terminate them. There's a lot of statements like that. Well, there is considerable moving back and forth between discussion of the conduct which demonstrated intentional conduct when her line was moved and the absence of mistake or inadvertence.  Number one is that the court was entitled to consider the arguments that the government made that those recordings were done by accident or inadvertently, and was entitled to assess the evidence they presented and to find that that argument that they made was not persuasive. Secondly, I think there's somewhat of an artificial distinction, just to conclude, between intentional interception and absence of accident or inadvertence, in that the absence of accident and inadvertence is part and parcel of the definition of intentional. So I don't think they can be artificially distinguished in the way the district court did. Thank you. Mr. Shapiro, good afternoon. Good afternoon. Thank you, Your Honors. May it please the court, Greg Shapiro for the United States. I think you've anticipated our arguments that the magistrate judge made two errors of law and the district court correctly found that there was not sufficient evidence in the record to show that PSI acted intentionally when it recorded Mrs. Middlebrook's calls after she left her job in the call center and moved to a different job where she was working with pharmaceutical companies. The first error of law, which was discussed already, was the magistrate's use of what was effectively a negligence standard in a case where the law clearly requires intent, and that's how the First Circuit construed it in the PharmaTrac case, where the court held that in order to show wiretap violation, the moving party must show that the defendant or the party that did the recording did so with the conscious objective of doing that recording. But what the magistrate found was that, not that, but that PSI, quote, should have known when it rewired Middlebrook's extension that her calls would continue to be recorded. That's negligence. That's in the last substantive paragraph of his opinion, and that's the topic sentence of that paragraph. Yes, later on in that same paragraph, he says that it was intentional, but that's the predicate that PSI should have known. This court has rejected a similar approach in the United States v. Ford case, which we cite in our papers and which I believe Mr. — I'm sorry, Judge Kayada wrote that decision where the court held that having reason to know is not enough to show mens rea. Here, there is a mens rea requirement. Having reason to know is not enough. The Fourth Circuit's decision in Sanders v. Bosch, which we also quoted in our papers or cited in our papers and which is cited as well in the PharmaTrac decision, highlights the distinction between recklessness or negligence and the intent required under Title III. In that decision, the court explained or noted that Congress had changed the law in 1986 from willful to intentional. And under the old willfulness standard, apparently there were some decisions that said that recklessness was enough. And by changing it from willful to intentional, Congress eliminated the possibility of showing a Title III violation based on recklessness. So, yes, perhaps the evidence here does show negligence. Well, I think we would stipulate it does show that they made a mistake. There was negligence. They should not have recorded her calls after she left the call center. They made a mistake, but there's no evidence that they went beyond something that could be characterized as negligence, which is what the magistrate judge found. On the burden allocation issue, what's your response to the other side's reference? I believe they refer to a discussion on the record that's not in the opinion, but the discussion on the record on the argument indicates the magistrate judge knew that intent was the requirement, knew that the burden was on you, or rather the burden was on the party seeking to bar the discovery. He certainly knew that, and he recognized that oral argument. But I think as you indicated in your questions to the other side, that's not how the opinion reads. He made two statements that clearly show he was effectively putting the burden on the government. He doesn't say that explicitly, but effectively he did. He's got the statement on page 9 that the evidence before the court does not plainly explain why PSI failed to terminate the recording license when rewiring Milbrooks' extension. That wasn't our burden to show that. We don't know why they didn't do it, but nor has the other side explained why. And that's why on the next page he says, it has not been necessary for the court or fact finder to choose between competing hunches when he's talking about other Title III cases. And so here he feels like he has to choose between competing hunches because we don't know why. But the defendants had the burden, I'm sorry, not the defendants, the appellants had the burden to show more than just a hunch, which is what we have on this record. We don't know why, and they need to show more than a hunch, and they failed to do that. But nonetheless, the magistrate judge picked one side, and we believe that that was an error of law. And I would just note one decision which we did not cite in our papers, which one of my colleagues pointed out to me during moot court, is Vinnick v. United States 205F3-1. And on page 7 of that decision, which is a First Circuit decision, the court said that when a trial court premises its ultimate finding on an erroneous interpretation of the standard to be applied, we do not use clear error review. And we would respectfully submit that there were two errors of law in this case by the magistrate judge. One was the use of a negligence standard, and the other was his effectively shifting the burden to the government, even though, yes, in the oral argument he recognized that it was the appellant's burden. So what we're left with is a record where the appellants rely on the collective knowledge doctrine to try to impute knowledge to PSI that someone must have intentionally recorded Ms. Middlebrooks' calls after she left the call center. They never identify who that is, and there's effectively no knowledge to collect under the collective knowledge doctrine, no knowledge to impute. There's no direct evidence whatsoever. There's no statement from someone that they knew this was happening. There's no e-mail showing that they knew this was happening. There's no direct evidence. I don't think there's any dispute about that. And then in terms of circumstantial evidence, there's no evidence of motive. They just stipulate it to that. Compare that to the Shumushkevich decision from the Seventh Circuit, which they cited in their brief, and then we discussed as well. There the defendant was convicted of a wiretap violation after he was found to have taken his boss's e-mails or intercepted her e-mails. And in that case, the court noted there was no direct evidence, but there was motive evidence because the defendant in that case was afraid he was about to get fired, and he had a motive to go sifting through his boss's e-mails to see if there was something in there. So the court found that that was a reason for the jury to find a Title III violation. There's nothing like that here. What do they have? They have, as Mr. Single pointed out, they have evidence that someone, we don't know who, but someone, maybe it was a PSI technician, maybe it was a contractor, but someone took a series of steps that resulted in Mrs. Middlebrooks' calls continuing to be recorded. But in PharmaTrack, that's not enough. In PharmaTrack, this court cited the legislative history on the statute, and there's a sentence in there where it says, intentional means more than that one voluntarily engaged in conduct or caused a result. So yes, we're not saying that someone did this under duress. Someone voluntarily took a number of steps that resulted in her being recorded, but no one believes that that was intentional. I tried to come up with an analogy. You came up with the one of falling down the stairs. Another one is a little more complex. Let's say my child gets a model toy car as a birthday present, and he's too young to put it together. So I put it together for him, and there's a book, and the car is supposed to run and have lights on when it's done, and there's an instruction manual of 20 or 30 steps, and I sit there one night, and I think I'm going through all the steps. I do that voluntarily, and I get to the end. I've got a car, and I press the on button, and it doesn't go, and there's no lights on. So it doesn't achieve the result that I intended. Now, did I intend to make a car that didn't go, that doesn't have lights? No, I intended to do the opposite. But I did do voluntarily all those different steps, and that's what someone at PSI did here. Someone voluntarily did a bunch of things, but that's not intent under FarmerTrack or under Title III. So what we're left with then is, and the other statement that they cite is, they cite one quote from the affidavit of the technician, the head technician, Mr. Grafazi, where he said that occasionally he logged into the Record and Evaluate server to check that it was working properly. And they draw from that that Mr. Grafazi, quote, would have seen and had knowledge that the Middlebrooks extension was still being recorded. That's the argument they make in their brief on page 34. But that argument has no basis in Mr. Grafazi's affidavit. He doesn't say that he actually noticed it. He says he occasionally went into this server, and he denies that he ever noticed it, and no one else says that they noticed that her line was being recorded. So what we're left with is a record, as you pointed out, that is devoid of any evidence of motive, devoid of any evidence of direct evidence that anyone knew this was happening or intended it to happen, devoid of circumstantial evidence that anyone should have known it was happening. There's no red flag in this case like there was in the Fourth Circuit decision in Anderson, I'm sorry, no, Abraham v. County of Greenville, where the county got a memo saying, warning the county that the recordings were happening. There's nothing like that here. There is no evidence whatsoever that anyone at PSI believed this was happening, intended it to happen, and absent any evidence like that, there's no basis to find a Title III violation. And so we would reiterate that the magistrate judge made an error of law in effectively or in applying a negligence standard and then in effectively shifting the burden to the government. And under those circumstances, it was correct for the district judge to reject the magistrate's decision and find that there was insufficient evidence of intent and that there was no Title III violation as a result and that there's no bar to PSI then turning over the recordings in response to the government's subpoena, which is, again, the first time that PSI learned they even had these recordings. I know I have more time, but if there are no further questions, I'm prepared to stand on the brief. Thank you. Thank you. Let me first deal with the supposed negligence standard, and the should-have-known phrase has been taken out of context by the government. And what the government has done is to ignore the two places in the magistrate judge's decision where the magistrate judge explicitly ruled that PSI knew that it had to take steps to disable the recording function and failed to do that, page 8 and page 11 in particular, where he summarizes his conclusions. Secondly, the evidence of what we don't have in this case, as we have in the cases the government relies on, is some evidence of an instruction to stop recording or some effort to stop recording where those efforts are simply not implemented properly. What there is no evidence of here, Your Honors, is that there is no evidence of any efforts to discontinue the recording. All the evidence of record shows the steps that were taken by Mr. Grafasi, and Mr. Shapiro says there's no evidence of who did what. The record in Grafasi's affidavit showed clearly that it was he alone, as the head of the whole telephone system, who was authorized to order rewiring of anybody's extension, and it was he and Sanders, his assistant, who were the only employees authorized to do the work of rewiring. And so one can certainly draw from that the inference that while there's nothing explicitly directly tying one of them into those actions, that it could be inferred that one of them had to be the ones who did it. And finally, Your Honors, just to conclude, as we in the government get mired in this crossfire of factual and legal nuances, I think it's easy to lose sight of what this case is really about, and that is the invasion of privacy that Title III is intended to prevent. My client, whose calls were recorded without her knowledge of consent, is the very type of person that is intended to benefit from that protection, and by reversing the magistrate judge without an adequate basis, the district court denied her that protection and undermined the purposes of Title III. Thank you. Thank you. All rise, please.